# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs May 15, 2001

## STATE OF TENNESSEE v. JOHN R. BLACK

**Direct Appeal from the Criminal Court for Davidson County**
**No. 99-A-396      Steve Dozier, Judge**

---

### No. M2000-01286-CCA-R3-CD- Filed April 16, 2002

---

A Davidson County grand jury indicted the defendant for one count of aggravated kidnapping, one count of aggravated rape, three counts of aggravated assault, and one count of assault. At the close of a jury trial, he stood convicted of aggravated kidnapping, two aggravated assaults, and one simple assault. He subsequently received a sixteen year sentence for the aggravated kidnapping; seven years each for the two aggravated assaults; and eleven months and twenty-nine days for the assault. The trial court also set count one to run consecutively to count five resulting in an effective sentence of twenty-three years.[1] The case is presently before this Court following the trial court's denial of the defendant's motion for a new trial. Through this appeal the defendant avers that (1) the evidence is insufficient to support his conviction for aggravated kidnapping; (2) the trial court erred in allowing the State to present photographic evidence to the jury; and (3) the trial court erred by permitting the State to amend for a second time the indictment charging him with aggravated rape. After reviewing these issues, we find that none merit relief but remand the case for correction of the judgments.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Affirmed and Remanded.**

JERRY L. SMITH, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and NORMA MCGEE OGLE, JJ., joined.

Monte D. Watkins, Nashville, Tennessee, for appellant, John R. Black.

---

[1] The judgments reflect conflicts concerning which counts are technically set to run consecutively and concurrently with one another. For example, the judgment for count four states that its sentence should be run consecutively to count five; however, the judgment for count five states that it is to be run concurrently with count four (but consecutively to count one). Furthermore, the judgment for count six makes no mention at all of count five and indicates that count six is to run concurrently with itself. While both the briefs of the defense and the State agree that the defendant's effective sentence is twenty-three years, the judgments should be corrected to avert any future confusion.

Paul G. Summers, Attorney General & Reporter; Jennifer L. Smith, Assistant Attorney General; Victor S. Johnson, District Attorney General; and Rachelle A. Laisnez, Assistant District Attorney General, for appellee, State of Tennessee.

## OPINION

### Factual Background

It is undisputed that the defendant and Eloise Adams, the victim, had developed a relationship. It is also undisputed that the defendant, who was in his late thirties, had been living with the victim, who was in her mid-sixties, at the Vine Hill high-rise prior to and during the dates involved with the charged offenses. Furthermore, the defendant acknowledges that he hit the victim with an open hand on more than one occasion on Friday, September 25,1998, because of her alleged involvement with another man. However, the victim's testimony recalls an ordeal[2] lasting for several days during which, among other things, the defendant struck her numerous times with his fist; repeatedly called her derogatory names; raped her; demanded that she change her phone number (which a representative of Bell South confirmed that she did); confined her in the apartment; "ransacked [her] house;" kicked her; and threatened her with a beer bottle. After hearing all the proof, the jury convicted the defendant of the aforementioned four charges, which ultimately led to this appeal.

### Sufficiency of the Evidence

Through his first issue the defendant challenges the sufficiency of the evidence to sustain his aggravated kidnapping conviction. Within this challenge he combines a traditional sufficiency argument with a State v. Anthony, 817 S.W.2d 299 (Tenn. 1991), issue; thus, we will address the issues as raised.

When a defendant challenges the sufficiency of the evidence, this Court is obliged to review that claim according to certain well-settled principles. A verdict of guilty, rendered by a jury and approved by the trial judge, accredits the testimony of the State's witnesses and resolves all conflicts in the testimony in favor of the State. State v. Cazes, 875 S.W.2d 253, 259 (Tenn. 1994); State v. Harris, 839 S.W.2d 54, 75 (Tenn. 1992). Thus, although the accused is originally cloaked with a presumption of innocence, the jury verdict of guilty removes this presumption "and replaces it with one of guilt." State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). Hence, on appeal, the burden of proof rests with the defendant to demonstrate the insufficiency of the convicting evidence. Id. The relevant question the reviewing court must answer is whether any rational trier of fact could have found the accused guilty of every element of the offense beyond a reasonable doubt. See Tenn. R. App. P. 13(e); Harris, 839 S.W.2d at 75. In making this decision, we are to accord the State the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences that may

---

[2] By the victim's account the assaultive behavior began on September 21, 1998, and continued intermittently almost until the arrival of the police in the early morning hours of September 26th.

be drawn therefrom. See Tuggle, 639 S.W.2d at 914. As such, this Court is precluded from re-weighing or reconsidering the evidence in evaluating the convicting proof. State v. Morgan, 929 S.W.2d 380, 383 (Tenn. Crim. App. 1996); State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Moreover, we may not substitute our own "inferences for those drawn by the trier of fact from circumstantial evidence." Matthews, 805 S.W.2d at 779.

As previously noted, the defendant's challenge involves aggravated kidnapping. This offense requires proof of:

> false imprisonment, as defined in § 39-13-302, committed: (1) To facilitate the commission of any felony or flight thereafter; (2) To interfere with the performance of any governmental or political function; (3) With the intent to inflict serious bodily injury on or to terrorize the victim or another; (4) Where the victim suffers bodily injury; or (5) While the defendant is in possession of a deadly weapon or threatens the use of a deadly weapon.

Tenn. Code Ann. § 39-13-304(a). According to the indictment involved in the defendant's case, the State sought to prove that the victim "suffered bodily injury as a result of the offense," thereby proceeding under subsection (4). See Tenn. Code Ann. § 39-13-304(a)(4). Furthermore, Tennessee Code Annotated section 39-13-302 states that "[a] person commits the offense of false imprisonment who knowingly removes or confines another unlawfully so as to interfere substantially with the other's liberty." Tenn. Code Ann. § 39-13-302(a).

With this background the defendant cites State v. Anthony to support his claim that this particular aggravated kidnapping conviction should not stand in conjunction with the assault offenses. Through Anthony, the Tennessee Supreme Court stated that the essential determination to be made in a case such as this is

> whether the confinement, movement, or detention [involved in the individual's case] is essentially incidental to the accompanying felony and is not, therefore, sufficient to support a separate conviction for kidnapping, or whether it is significant enough, in and of itself, to warrant independent prosecution and is, therefore, sufficient to support such a conviction.

Id. at 306. Thereafter, our supreme court added "that one method of resolving this question is to ask whether the defendant's conduct 'substantially increased [the] risk of harm over and above that necessarily present in the [attending] crime . . . itself.'" Id. (quoting State v. Rollins, 605 S.W.2d 828, 830 (Tenn. Crim. App. 1980)).

In State v. Dixon, 957 S.W.2d 532 (Tenn. 1997), the supreme court further refined the approach to be taken when analyzing these issues. See id. at 535. The reviewing court must ascertain "whether the movement or confinement was beyond that necessary to consummate the act of" the accompanying offense. Id. "If so, the next inquiry is whether the additional movement or

confinement:  (1) prevented the victim from summoning help;  (2) lessened the defendant's risk of detection;  or (3) created a significant danger or increased the victim's risk of harm." Id. The Dixon court clearly stated that the intent is not to provide a defendant with "a free kidnapping merely because he [or she] also committed" the primary offense, but rather is merely to "prevent the injustice which would occur if a defendant could be convicted of kidnapping where the only restraint utilized was that necessary to complete the act of" the accompanying crime. See id. at 334.

Turning to the facts of the case presently before us, the defendant avers that acts relative to confinement in this case were "only incidental to the aggravated assault." We respectfully disagree.

The defendant asks us to limit our consideration of the proof of kidnapping to testimony concerning the defendant's act of dragging the victim back into her apartment on September 26; however, in its closing, the prosecution clearly delineated for the jury the time frame involved as beginning when the defendant arrives "home from work with his beer Friday afternoon [, the 25th,] until he drags her back into the apartment" on the 26th. The victim testified that she could not have left her apartment after the defendant came home on September the 25th. She explained that at that time the defendant remained in the front of the residence (where the means to exit was located); "was in a rage"; and informed her that she was "not going anywhere." On this evening, the defendant kicked the victim under the chin with his steel-toed shoes causing a wound that required stitches and left a scar. Also during this time he threatened her with a beer bottle, stating, "I should mess up your face so nobody else would want you." Because the victim was afraid that if the defendant struck her with the bottle he would render her unconscious, the victim began working her way toward the door. After she succeeded in running outside screaming for a brief period of time, the defendant caught her, placed his hand over her mouth, and pulled her back into the apartment. Thereafter, a neighbor who had seen and heard this from the housing tower opposite the victim's, called 911 at approximately 2:30 a.m.

We find that the extended period of confinement involved here went beyond that needed to commit the assaults. See id. at 306.  Moreover, the record would support a finding that the kidnapping was to prevent the victim from summoning help and to lessen his detection as the perpetrator of the assaults on the victim.

In sum, we find the proof more than adequate to sustain the jury's finding of guilt as to aggravated assault. Additionally, for the reasons outlined above, Anthony and its progeny do not require the setting aside of this conviction. See, e.g., Dixon, 532 S.W.2d at 535-36; State v. Michael J. McCann, No. M2000--2990-CCA-R3-CD, 2001 WL 1246383, at *3-*5 (Tenn. Crim. App. at Nashville, Oct. 17, 2001); State v. Danyelle Dewain Parker, No. M2000-00405-CCA-R3-CD, 2001 WL 427654, at *9-*10 (Tenn. Crim. App. at Nashville, Apr. 26, 2001). This issue, therefore, lacks merit.

**Admission of Photographs**

The defendant next asserts that the trial court should not have admitted photographs showing the victim's injuries because the danger of resulting unfair prejudice outweighed the potential probative value of the exhibits. To support this contention, the defendant turns to the rationale of State v. Banks, 564 S.W.2d 947 (Tenn. 1978).

As we begin our analysis, we note well established precedent providing "that trial courts have broad discretion in determining the admissibility of evidence, and their rulings will not be reversed absent an abuse of that discretion." State v. McLeod, 937 S.W.2d 867, 871 (Tenn. 1996). Moreover, the Tennessee Rules of Evidence embody, and our courts traditionally have acknowledged, "a policy of liberality in the admission of evidence in both civil and criminal cases." Banks, 564 S.W.2d at 949; State v. Robinson, 930 S.W.2d 78, 84 (Tenn. Crim. App. 1995). To be admissible, evidence must satisfy the threshold determination of relevancy mandated by Tennessee Rule of Evidence 401. See, e.g., Banks, 564 S.W.2d at 949. Rule 401 defines "relevant evidence" as being "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Tenn. R. Evid. 401. However, relevant "evidence may be excluded if its probative value is substantially outweighed by [, among other considerations,] the danger of unfair prejudice." Tenn. R. Evid. 403; see also, e.g., Banks, 564 S.W.2d 951.

Prior to the admission of the contested photographs in the instant case, the trial judge conducted a jury-out hearing after which he made a series of findings. Upon reviewing the photographs, the trial court disallowed two as being cumulative and initially admitted one for identification purposes only until medical testimony assured the relevance of this photograph. Furthermore, the trial court described in some detail the relevance of each of the seven other photographs admitted. Finally, speaking about the group of photographs permitted, the lower court declared that they "more accurately and with more clarity, depict and show [the] injuries" than did the victim's verbal descriptions.

After reviewing the record, we agree. In order to capture the variety of injuries suffered, the photographs depict the victim's arms as well as her face from different angles.[3] Furthermore, expert medical testimony called in this case indicated that swelling and bruising offer insight into the time that has passed since the infliction of a particular injury. For example, swelling and redness indicates newer injuries while purple bruising sometimes indicates older ones. The medical expert testified that the photographs show "injur[ies] in different stages of healing." One photograph depicts swollen lips and fresh blood, indicating a newer injury, while dark purple discoloration on both sides of the victim's mouth is in another picture. As aforementioned, the prosecution's version of events involved abuse inflicted over a series of days. The defendant denied committing any misconduct except on Friday, September 25th. The photographs therefore bear on the credibility of the witnesses as well as directly illustrating the injuries resulting from the defendant's assaults upon the victim.

---

[3]The police took these photographs in the early hours of September 26th at the hopsital.

Finally, although unpleasant, the photographs are not so gruesome as to create undue prejudice. We find no abuse of discretion in the trial court's conclusion that the probative value of these exhibits outweighed the danger of unfair prejudice.

## Allowing a Second Amendment of the Aggravated Kidnapping Indictment

Finally, the defendant contends that the trial court erred in permitting the prosecution to amend, five days before trial, the dates involved in the aggravated kidnapping count. He asserts that these dates represented "a material variance" resulting in prejudice to the defendant and that allowing this second amendment "usurp[ed] the authority of the grand jury." In response, the State avers that the defendant has waived this issue by failing to include the transcript of the hearing regarding the second motion to amend.

Pursuant to Tennessee Rule of Criminal Procedure 7(b), "[a]n indictment, presentment or information may be amended in all cases with the consent of the defendant. If no additional or different offense is thereby charged and no substantial rights of the defendant are thereby prejudiced, the court may permit an amendment without the defendant's consent before jeopardy attaches." Id. Moreover, the trial court's decision concerning whether to allow an amendment is not to be disturbed by this Court absent a showing of an abuse of discretion. See, e.g., State v. Daniel Ray Styles, No. E2001-00905-CCA-R3-CD, 2001 WL 1231511, at *3 (Tenn. Crim. App. at Knoxville, Oct. 17, 2001); see also State v. Kennedy, 10 S.W.3d 280, 283 (Tenn. Crim. App. 1999).

Upon review, we agree that the record presented is inadequate to address a question of abuse of discretion. For example, the record does include the trial court's minute entry relative to the decision to grant this second motion to amend.[4] However, the entry merely notes that both parties were present and then states that "this cause came to be heard by the Court upon the State's motion to amend indictment: after due consideration and all the evidence introduced, said motion is granted." We have no access to the evidence presented in or any specific findings from this hearing. The need for a transcript of the hearing on this motion becomes even more apparent upon reviewing the trial court's findings at the new trial motion hearing. More particularly, at the latter hearing the trial court referred to "a lengthy discussion" that was had on the contested motion to amend the indictment. The trial court also found that the defendant had not been prejudiced by this amendment because counsel had been "well aware" of the allegations involved in "that particular week."

The appellant (in this case, the defendant) bears the duty of preparing a record that conveys "a fair, accurate, and complete account of what transpired [in the trial court] with respect to the issues" that form the basis for the appeal. State v. Ballard, 855 S.W.2d 557, 560-61 (Tenn. 1993); see also Tenn. R. App. P. 24(b); State v. Roberts, 755 S.W.2d 833, 836 (Tenn. Crim. App. 1988). The failure to do so results in a waiver of these issues and a presumption that the trial court ruled correctly. State v. Ivy, 868 S.W.2d 724, 728 (Tenn. Crim. App. 1993).

---

[4] It appears that the dates involved in the amendment varied three to four days; the trial court granted the amendment five days before trial; and the amendment charged no different nor additional offense.

Without the omitted transcript, this court lacks the ability to adequately review the matter. As a result, we must presume that the trial judge acted correctly and conclude that the defendant is not entitled to relief based upon this issue either.[5]

## **Conclusion**

For the foregoing reasons we find that the defendant's issues do not merit relief. Accordingly, the judgment of the trial court is AFFIRMED. However, the case is REMANDED for the correction of the judgment forms as noted supra.

_____
JERRY L. SMITH, JUDGE

---

[5] As aforementioned, the defendant also asserts that allowing the State the opportunity to amend an indictment a second time invades the province of the grand jury. Nevertheless, he concedes that one amendment does not do so, and we see no provision in the above-cited rule limiting the prosecution to one amendment. Furthermore, we observe that the defendant cites no authority supporting this conclusory statement.