IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs November 27, 2007

## STATE OF TENNESSEE v. DEARICE CATES, ALIAS

**Direct Appeal from the Criminal Court for Knox County**
**No. 84182A     Richard R. Baumgartner, Judge**

_____

**No. E2006-02553-CCA-R3-CD - Filed January 28, 2008**

_____

The defendant was convicted by a Knox County jury of three counts of especially aggravated kidnapping and one count each of aggravated robbery, attempted aggravated robbery, assault, and aggravated burglary, and received an effective sentence of twenty-four years. The trial court subsequently granted the defendant's motion for judgment of acquittal as to the three especially aggravated kidnapping convictions, holding that the defendant could not be convicted of both kidnapping and robbery because the movement or confinement supporting each kidnapping conviction was essentially incidental to the commission of the robbery, decisions which the State appealed. The defendant likewise appealed, challenging the sufficiency of the evidence supporting his conviction for aggravated robbery. We affirm the defendant's conviction for aggravated robbery and the trial court's dismissal of one count of especially aggravated kidnapping. We reverse the trial court's dismissal of the remaining two counts of especially aggravated kidnapping and remand for reinstatement of those convictions. In all other respects, the judgments of the trial court are affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed in Part, Reversed in Part, and Remanded**

ALAN E. GLENN, J., delivered the opinion of the court, in which NORMA MCGEE OGLE and D. KELLY THOMAS, JR., JJ., joined.

Robert E. Cooper, Jr., Attorney General and Reporter; Renee W. Turner, Assistant Attorney General; Randall E. Nichols, District Attorney General; and Ta Kisha M. Fitzgerald, Assistant District Attorney General, for the appellant, State of Tennessee.

Brandt Davis (on appeal) and Paul S. Hensley (at trial), Knoxville, Tennessee, for the appellee, Dearice Cates.

**OPINION**

**FACTS**

Tiffany Dailey testified that on July 24, 2005, she was living in a four-bedroom house in Knoxville with her seven-year-old son, Demarcus, and four-year-old daughter, Dimiya.[1] On the night of the incident she took her children to her mother's house to celebrate her son's seventh birthday, where he received money as a gift. When the three returned home, Demarcus placed his money in a plastic container in his mother's room and began playing with his sister while Ms. Dailey cleaned the house. Ms. Dailey checked on the children between 9:00 and 9:30 p.m. and found them asleep. She resumed cleaning and eventually fell asleep in Demarcus' room, until she was awakened by a voice telling her, "Bitch, get up." Ms. Dailey testified that when she sat up she saw the defendant standing in front of her with a gun pointed at her face. He ordered her to get up and give him money. She informed him that she did not have any money, and the pair began walking through the house. The defendant rubbed Ms. Dailey on the buttocks, hit her in the head, and said, "My boy already got your kids back there laying down," which caused her to run to her bedroom to be with her children.

When Ms. Dailey entered her bedroom, she found the codefendant holding a gun to the back of her daughter, who was lying on top of her son. She could tell that the children had been moved because they did not sleep in that position. The defendant continued to demand money from Ms. Dailey, but he and the codefendant exited the room when they felt the vibration from a nearby train. Ms. Dailey and her children then fled the home and sought assistance from a neighbor, who summoned police. When the police escorted Ms. Dailey back to her home, she noticed that her son's belongings were strewn throughout his room, her drawers were pulled out, and clothes were scattered around the house. She noticed that her cordless phone was missing, and her son told her that his money was gone.

Ms. Dailey subsequently identified the defendant from a photographic lineup. She testified that she did not give the defendant or codefendant permission to enter her home or take her phone or Demarcus' money. Ms. Dailey acknowledged that she did not see the defendant or codefendant take her phone or the money. She testified that she did not know how much money her son had placed in the plastic container and that some money remained in the container after the robbery.

Investigator Joseph Huckleby of the Major Crimes Unit of the Knoxville Police Department testified that he interviewed Ms. Dailey on July 25, 2005, and showed her a photographic lineup from which she identified the defendant. He later took the defendant into custody, read him his Miranda rights, and interviewed him. An audiotape of the defendant's statement to Investigator Huckleby, in which the defendant acknowledged his presence at the crime scene, was played for the jury.

Demarcus Dailey, who was eight years old at the time of trial, testified that he knew he was required to tell the truth and knew the difference between the truth and a lie. He said that his grandmother had given him eight dollars for his seventh birthday and that when he arrived home the

---

[1]To avoid repeating the entire names of Demarcus Dailey and Dimiya Dailey, since they share the same last name, we will utilize their first names in this opinion. We intend no disrespect by doing so.

night of his birthday, he placed the money in a plastic container on top of the television in his mother's bedroom. He then fell asleep in that room with his sister. When he woke up, he saw two men in the room, one with a mask and one with long braids. Demarcus testified that he watched the man with the braids take his money from the top of the television. He said that the two men were frightened by the train noise and left the bedroom. Demarcus remembered running to a neighbor's house with his sister after his mother told them to flee. Later, when the police escorted him back to his house, Demarcus told his mother that his money was gone.

Following deliberations, the jury convicted the defendant of the especially aggravated kidnapping of Tiffany Dailey, Demarcus Dailey, and Dimiya Dailey (Counts 1, 3, and 7); the attempted aggravated robbery, assault, and aggravated burglary of Tiffany Dailey (Counts 10, 14, and 15); and the aggravated robbery of Demarcus Dailey (Count 12). He was sentenced as a Range I, violent offender to twenty-four years for the especially aggravated kidnapping convictions in Counts 3 and 7 and to twenty-two years for the especially aggravated kidnapping conviction in Count 1. He was sentenced as a Range I, standard offender to eleven years for the aggravated robbery conviction, five years each for the attempted aggravated robbery and aggravated burglary convictions, and six months for the assault conviction. All sentences were ordered to be served concurrently for an effective sentence of twenty-four years.

The defendant moved for a judgment of acquittal on the three convictions for especially aggravated kidnapping, arguing that due process principles precluded convicting the defendant of both robbery and kidnapping because any restraint or confinement used to support the kidnapping charges was merely incidental to that required to commit the robbery. The trial court agreed and reversed the convictions, finding that the movement and confinement of the victims was slight and subjected the victims to no greater harm than the robbery.

## ANALYSIS

On appeal, the State argues that the dual convictions for especially aggravated kidnapping and aggravated robbery did not violate the defendant's due process rights. The defendant urges that we affirm the trial court's reversal of each especially aggravated kidnapping conviction and, in his appeal, argues that the evidence was insufficient to support his conviction for aggravated robbery. On this issue, the State responds that the evidence supports the aggravated robbery conviction.

### I. Especially Aggravated Kidnapping Convictions

The United States and Tennessee Constitutions prohibit the deprivation of life, liberty, or property without due process of law. U.S. Const. amend. XIV; Tenn. Const. art. I, § 8. Our supreme court has twice considered whether this right to due process is violated by dual convictions for kidnapping and another underlying felony stemming from the same incident. In State v. Anthony, 817 S.W.2d 299, 301 (Tenn. 1991), the defendant and an accomplice robbed a restaurant in Knox County. While the accomplice detained three employees behind the restaurant, the defendant entered and ordered a manager and a waitress to accompany him to the office to open the safe. After

retrieving the contents of the safe, the defendant encountered another employee leaving the restroom and ordered him to return to the restroom and remain there. Then, he and his accomplice departed the restaurant. The defendant was convicted of the armed robbery of the store manager, the armed burglary of the restaurant, and the aggravated kidnappings of all six employees. Id. The Tennessee Supreme Court upheld this court's reversal of each of the defendant's aggravated kidnapping convictions, holding that due process principles preclude dual convictions where the "confinement, movement, or detention is essentially incidental to the accompanying felony and is not, therefore, sufficient to support a separate conviction for kidnapping." Id. at 306.

In State v. Dixon, 957 S.W.2d 532, 533 (Tenn. 1997), the defendant had assaulted the victim on a street, dragged her thirty to forty feet into some foliage on a nearby vacant lot, and raped her. He was convicted of aggravated kidnapping, aggravated assault, and attempted sexual battery. Id. Upholding the defendant's dual convictions, the supreme court stated, "[t]he Anthony decision should only prevent the injustice which would occur if a defendant could be convicted of kidnapping where the only restraint utilized was that necessary to complete the act of rape or robbery. Accordingly, any restraint in addition to that which is necessary to consummate rape or robbery may support a separate conviction for kidnapping." Id. at 534-35. The court explained that "it is the purpose of the removal or confinement and not the distance or duration that supplies a necessary element of aggravated kidnapping." Id. at 535. Therefore, if a reviewing court finds that the movement or confinement supporting the kidnapping conviction was beyond that necessary to commit the accompanying felony, the court must then ask whether the additional movement or confinement: (1) prevented the victim from summoning help; (2) lessened the defendant's risk of detection; or (3) created a significant danger or increased the victim's risk of harm. Id. If any of these three conditions is satisfied, then a separate kidnapping conviction may stand.

## A. Tiffany Dailey

The State argues that the defendant's conviction for the especially aggravated kidnapping of Tiffany Dailey should be reinstated because the movement of Ms. Dailey was not incidental to the commission of the attempted aggravated robbery against her. As we understand it, the State contends that the attempted aggravated robbery was complete when the defendant roused Ms. Dailey and demanded money, so the act of following Ms. Dailey around her home and into her bedroom supports a separate kidnapping conviction. According to the State, the defendant's conviction for assaulting Ms. Dailey while she was in the hallway establishes that the additional movement supporting the kidnapping conviction increased the victim's risk of harm. The defendant responds that the attempted aggravated robbery was ongoing throughout the entire incident because he continually demanded money from Ms. Dailey as they moved about the house, and any movement or confinement that occurred was merely incidental to the robbery. The defendant argues that "if one push of a victim would constitute excessive force, then virtually every robbery would also constitute a kidnapping."

Applying the Anthony and Dixon decisions to this conviction, we first hold that the restraint of Ms. Dailey's liberty was beyond that necessary to consummate the act of attempted aggravated

-4-

robbery. Although we recognize, as the defendant urges, that "[e]very robbery, by definition, involves some detention against the will of the victim," we nonetheless find that the detention in this case extended beyond that necessary to complete the underlying felony. Aggravated robbery is, *inter alia*, the intentional or knowing theft of property from the person of another by violence or putting the person in fear, when accomplished with a deadly weapon. Tenn. Code Ann. § 39-13-402(a)(1) (2006). As relevant here, a person commits criminal attempt who intentionally engages in action or causes a result that would constitute an offense if the circumstances surrounding the conduct were as the person believes them to be. Tenn. Code Ann. § 39-12-101(a)(1) (2006). Therefore, the defendant committed attempted aggravated robbery against Ms. Dailey when he first ordered her to get up and give him money in the mistaken belief that Ms. Dailey had money stored in her home. While it is true that this offense necessarily required some restraint on Ms. Dailey's liberty of movement, it was unnecessary to follow Ms. Dailey around the house at gunpoint after she immediately informed the defendant that she had no money to give him. The State's argument that this ancillary movement increased the victim's risk of harm is persuasive. The record indicates that as the defendant followed Ms. Dailey around the home, he touched her buttocks and hit her in the head. Because the defendant imposed an additional restraint on Ms. Dailey's liberty beyond that required to commit attempted aggravated robbery, and because this restraint exposed Ms. Dailey to an increased risk of harm, the trial court erred in reversing this especially aggravated kidnapping conviction. Accordingly, the defendant's conviction for especially aggravated kidnapping in Count 1 is reinstated.

## B. Dimiya Dailey

The State next argues that the defendant's conviction for the especially aggravated kidnapping of Dimiya Dailey should be reinstated because she was not a victim of the attempted aggravated robbery of Tiffany Dailey or the aggravated robbery of Demarcus Dailey. The defendant counters that Dimiya's confinement was brief and incidental to the robbery of Demarcus and attempted robbery of Ms. Dailey, and did not substantially increase her risk of harm.

We conclude that the confinement of Dimiya was not incidental to the aggravated robbery or attempted aggravated robbery. It was not necessary to confine four-year-old Dimiya to facilitate either robbery; she could not reasonably have been considered a threat to interfere with the robbery or summon help. Her confinement substantially increased her risk of harm because it was accomplished by holding a gun to her back. It is immaterial that she was confined only briefly, for the statutory elements of especially aggravated kidnapping do not require a finding that the defendant moved the victim any specific distance or restrained the victim for any particular length of time. State v. Carvin Lamont Thomas, No. M2002-01716-CCA-R3-CD, 2003 WL 21233512, at *4 (Tenn. Crim. App. May 28, 2003), perm. to appeal denied (Tenn. Oct. 27, 2003). Accordingly, the defendant's conviction for especially aggravated kidnapping in Count 7 is reinstated.

## C. Demarcus Dailey

The State contends that the defendant's conviction for the especially aggravated kidnapping of Demarcus Dailey should be reinstated because the robbery occurred after the kidnapping was completed. The defendant replies that the confinement of Demarcus was no greater than that necessary to consummate the robbery. As to these claims, as we will explain, we agree with the defendant.

Initially, we disagree with the State that the kidnapping was complete before the robbery began. The proof at trial showed that the codefendant remained with the children during the entire incident. The kidnapping offense was ongoing when the defendant took Demarcus' money from the plastic container. In any event, the temporal sequence of the two offenses is irrelevant to our analysis. Anthony and Dixon prohibit dual convictions for kidnapping and an accompanying felony whenever the movement or confinement used to support the kidnapping charge is merely incidental to the commission of the other felony, drawing no distinction between kidnappings that are completed prior to the commission of the other felony and those that are not.

We now turn to the merits of the defendant's claim. As stated previously, aggravated robbery is the intentional or knowing theft of property from the person of another by violence or putting the person into fear, using a deadly weapon. Especially aggravated kidnapping is, *inter alia*, the knowing, unlawful removal or confinement of another so as to substantially interfere with the other's liberty, where the victim is under the age of thirteen. Tenn. Code Ann. § 39-13-305(a)(2) (2006). The aiming of a firearm at Demarcus simultaneously confined him (an element of especially aggravated kidnapping) and placed him into fear (an element of aggravated robbery). Herein lies the distinction between the Demarcus and Dimiya convictions. It is possible to commit aggravated robbery against Demarcus without confining Dimiya, but not without confining him. In other words, the confinement of Demarcus was essentially incidental to the commission of the accompanying felony, and a separate conviction for kidnapping cannot stand. Accordingly, we uphold the trial court's reversal of the conviction for especially aggravated kidnapping in Count 3.

## II. Aggravated Robbery Conviction

The defendant argues that the evidence was insufficient to support his conviction for the aggravated robbery of Demarcus Where sufficiency of the convicting evidence is challenged, the relevant question for the reviewing court is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); see also Tenn. R. App. P. 13(e) ("Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt."); State v. Evans, 838 S.W.2d 185, 190-92 (Tenn. 1992); State v. Anderson, 835 S.W.2d 600, 604 (Tenn. Crim. App. 1992).

All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact. See State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973). Our supreme court stated the rationale for this rule:

> This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

Bolin v. State, 219 Tenn. 4, 11, 405 S.W.2d 768, 771 (1966) (citing Carroll v. State, 212 Tenn. 464, 370 S.W.2d 523 (1963)).

A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal, a convicted defendant has the burden of demonstrating that the evidence is insufficient. See State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

The defendant asserts that his aggravated robbery conviction must be reversed because "the [S]tate's case rests solely on the uncorroborated testimony of this child [Demarcus] and is not supported by any independent corroborative evidence." He contends that the trial court erred by not conducting an independent inquiry into Demarcus' competence to testify. We reject the defendant's unstated premise that the testimony of children may not be accredited absent independent corroboration. In Tennessee, there exists a rebuttable presumption that children under fourteen years of age are competent to testify. State v. Campbell, 904 S.W.2d 608, 612 (Tenn. Crim. App. 1995). The defendant did not sufficiently rebut this presumption at trial. It is true that Demarcus acknowledged on cross-examination that he had discussed his testimony with the prosecutor. However, the following exchange between Demarcus and the prosecutor prior to direct examination provided a sufficient basis for the trial court to find him competent to testify:

> Q: Now, Demar, you know that you've got to tell the truth today? And you've got to say "yes" or "no."
>
> A: Yes.
>
> Q: Okay. So, Demar, you see this flag behind you, if I were to say that this was purple, would that be a truth or a lie?
>
> A: Lie.

Q: And you understand that I can't say it. If I say that–if I tell a lie, I'd get into trouble?

A: Yeah.

Q: You understand. So you got to tell the truth. Okay?

A: (Indicated by moving head up and down.)

Q: Can you do that for us today?

A: Yes.

The trial court was not required to independently examine Demarcus' competence. The competency of a witness is a matter entrusted to the sound discretion of the trial judge. State v. Carroll, 36 S.W.3d 854, 866 (Tenn. Crim. App. 1999). The trial court did not abuse its discretion in finding Demarcus competent to testify based on the State's examination.

Turning to the sufficiency of the proof, Tiffany Dailey testified that the defendant brandished a firearm during their encounter. From a photographic lineup, she later identified the defendant, depicted wearing braids, as her attacker. Demarcus Dailey testified that he saw a man with braids take his money from the plastic container on top of the television. From this evidence, a rational jury could find that the defendant committed each element of the offense of aggravated robbery. This issue is without merit.

## CONCLUSION

Based upon the foregoing reasoning and authorities, the judgments of the trial court in Counts 1 and 7 are reversed, the defendant's convictions for especially aggravated kidnapping in those counts are reinstated, and the case is remanded to the trial court for entry of amended judgments in accordance with this opinion. In all other respects, the judgments of the trial court are affirmed.

_____
ALAN E. GLENN, JUDGE